IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TONY TREMAYNE LEWIS,

     Plaintiff,

     v.                                CASE NO. 25-3271-JWL

JEFF ZMUDA, et al.,

     Defendants.

<u>MEMORANDUM AND ORDER TO SHOW CAUSE</u>

Plaintiff Tony Tremayne Lewis is hereby required to show good cause, in writing to the undersigned, why this matter should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein. Plaintiff is also given the opportunity to file an amended complaint to cure the deficiencies.

## I. Nature of the Matter before the Court

Plaintiff brings this pro se civil rights case under 42 U.S.C. § 1983. Plaintiff is incarcerated at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF"). The Court granted Plaintiff leave to proceed in forma pauperis.

Plaintiff's claims in Counts I and II are based on disciplinary hearings at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF"). Plaintiff claims that these three disciplinary proceedings occurred in December 2023. (Doc. 1, at 2, 5.) Plaintiff alleges that Defendant Philip Marley conducted the hearings and found Plaintiff guilty. *Id*. at 5. Plaintiff claims that his disciplinary hearings were held in absentia after staff falsely claimed that Plaintiff became disruptive when they made contact with Plaintiff by phone. *Id*. at 5, 9. Plaintiff claims that the assigned staff representative did not properly represent Plaintiff at the hearings. *Id*.

As Count III, Plaintiff alleges that Defendants Shawn Chastain and Alexander Owens disregarded a substantial risk to Plaintiff while he was housed in the Restrictive Housing Unit at EDCF in March 2023. *Id*. at 23. Plaintiff alleges that his cellmate became angry when both he and Plaintiff were not allowed to leave their cell to shower due to Plaintiff having a sheet draped over his bed area. *Id*. at 10. Plaintiff alleges that his cellmate told the officers that violence was going to erupt if his shower was not reinstated. *Id*. at 10–11. Plaintiff claims that Chastain just looked at the cellmate and said that he was responsible for his own actions. *Id*. at 11. Plaintiff alleges that both officers refused to remove Plaintiff to a safer place. *Id*. Plaintiff claims that after his cellmate lost his temper and began punching Plaintiff, Owens arrived and told the cellmate to stop and then separated Plaintiff and his cellmate. *Id*.

As Count IV, Plaintiff alleges that when he requested to be separated from his cellmate at EDCF in January 2024, he was placed in a less-favorable MRA cell with no electricity or a bunk to avoid sleeping on the floor. *Id*. at 12–13.

As Count V, Plaintiff alleges that the Kansas Department of Corrections ("KDOC") subjected Plaintiff to a retaliatory in-facility transfer and cruel and unusual punishment. *Id*. at 14. Plaintiff alleges that in February 2024 he was still being held in the MRA cell at EDCF. *Id*. Plaintiff claims that during this time he had a civil rights lawsuit pending against KDOC officials. *Id*. Defendant Cody Austin told Plaintiff to pack up because he was being moved to cell 200 in the BCH. *Id*. Plaintiff claims that this cell had even worse living conditions. *Id*. Plaintiff alleges that after he sent messages on his tablet complaining about his living situation, his tablet was confiscated less than 48 hours later by Larry Johnson and Shawn Chastain. *Id*. Plaintiff claims that EDCF never responded to his grievances about cell 200. *Id*. Plaintiff claims that he was kept in cell 200 for "approx. 7 days." *Id*.

Plaintiff was then moved to cell 102-B which had no working hot water and the shelf over Plaintiff's bunk was missing. *Id*. at 15. Because Plaintiff was forced to store his property on the floor, it was "almost ruined" when an inmate a few cells away flooded his cell. *Id*.

As Count VI, Plaintiff alleges he sent a Form 9 to Officer Owens to serve as a deposition asking Owens to confirm that Plaintiff had a bleeding lip after the assault by another inmate. *Id*. at 16. The form was returned to Plaintiff without a written confirmation on it, and Plaintiff was told that officials were not allowed to get involved with inmates' legal matters. *Id*. Plaintiff's grievance on the matter was denied. *Id*.

As Count VII, Plaintiff alleges that the KDOC's unconstitutional policy constituted cruel and unusual punishment. *Id*. at 17. Plaintiff alleges that although his incentive level was Status 2, because he was in restrictive housing he was not allowed to order commissary items under the Union Supply monthly package program that was supposed to provide level 2 and 3 inmates the privilege to order better canteen items. *Id*.

As Count VIII, Plaintiff alleges that in November 2023 he sought an emergency transfer due to being retaliated against and harassed by staff at EDCF. *Id*. at 18. Plaintiff alleges that he filed a grievance that was not forwarded to the proper EDCF official and the response he received from Defendant Chastain was "Thank you for your input." *Id*. Plaintiff then filed a grievance on Chastain, and it was denied. *Id*. Plaintiff appealed to the Warden and received no response. *Id*. Plaintiff refiled the grievance a year later and it was denied. *Id*.

Plaintiff attaches what appears to be another Count labeled as Count 32. *Id*. at 19. Plaintiff alleges that although at EDCF he was allowed 15-20 minutes to shower and the use of a mirror while shaving, he is only given 5 to 7 minutes to shower at HCF and is not permitted to use a mirror while shaving. *Id*. Plaintiff told staff he was going to seek $1,500 per day that he was

deprived of his right to watch his television. *Id.* Staff refused to give Plaintiff his television and refused Plaintiff's request to transfer. *Id.* Plaintiff alleges that HCF's mailroom failed to provide him with the four manila envelopes he requested for mailing out legal letters. *Id.* Plaintiff claims his transfer to HCF from EDCF was retaliatory. *Id.* at 18–19.

Plaintiff has named 52 defendants, including staff from EDCF, HCF, and the KDOC. For relief, Plaintiff seeks punitive and compensatory damages, and injunctive relief in the form of an order requiring the KDOC to award Plaintiff his grievance remedies that were maliciously rejected, including the receipt of commissary items and Plaintiff's transfer to another state. *Id.* at 24–26.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise

a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in

this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Counts I and II

Plaintiff claims that his three disciplinary proceedings occurred in December 2023. However, on November 8, 2023, Plaintiff filed a supplement in Case No. 23-3236 raising these same claims. *See Lewis v. Zmuda*, Case No. 23-3236-JWL, Doc. 5, at 2 (D. Kan. Dec. 13, 2023). Plaintiff claimed that:

> During the late months of the year 2022 the Plaintiff was served three disciplinary reports while at El Dorado Correctional Facility. According to a later issued Disciplinary Summons, these disciplinary hearings were scheduled for December 14, 2022. The disciplinary officer, who was delegated to hear these cases was CS1 Philip Marley. On the day of the hearing (December 14, 2023) CS1 Marley failed to give the Plaintiff any hearing, but found [him] guilty of all disciplinary allegations, and sentenced the Plaintiff to serve 90 days of privilege restriction, and to pay 60$ in disciplinary fines. According to the Defendant Philip Marley he claimed that after making contact with the Plaintiff via telephone, he was forced to conduct the hearings without the Plaintiff's presence, due to the Plaintiff becoming "disruptive." The Plaintiff obtained a printout of his telephone history, and used it to show the Deputy Warden that no call was made in to disciplinary on December 14th—which made CS1 Marley's allegations completely false. As a result, the Plaintiff's disciplinary convictions were reversed and the matter was set for a new hearing, with a different disciplinary officer. The Plaintiff seeked [sic] administrative relief from CS1 Marley, for using false claims to take away his right to a fair hearing, but prison policy prevents any inmate from using the grievance system if the issue pertains to a disciplinary matter. So now, the Plaintiff comes to this District Court, seeking the proper relief for the adverse actions committed by the Defendant Philip Marley.

*Id*.  Plaintiff raised this same claim again in his amended complaint in Case No. 23-3236 and referenced Exhibits T and T–1 as supporting his claim.  *Id*. at Doc. 7, at 8.  These exhibits are contained in Doc. 9–2 in Case No. 23-3236.  Exhibit T is Plaintiff's appeal of his three disciplinary convictions in Cases 22-12-097, 22-12-096, and 22-12-098.  *Id*. at Doc. 9–2, at 37.  The exhibit reflects that Plaintiff's disciplinary hearings were conducted on December 14, 2022, and he received his dispositions on January 11, 2023.  *Id*.  Plaintiff states that when he received the dispositions on January 11, 2023, "it was then that he learned who deprived him Due Process and how it was done."  *Id*. (noting that his hearings were conducted in absentia by CS1 Marley on December 14, 2022, with UTM Lewis acting as staff assistant).  Exhibit T–1 is a continuation of Plaintiff's appeal of the disciplinary cases.  *Id*. at 39.

It also appears from Plaintiff's Complaint in this case that the disciplinary proceedings occurred in December 2022.  Plaintiff attaches the same phone log that he used as an exhibit in Case No. 23-3236.  *See* Plaintiff's Complaint in this case at Doc. 1, at 6 (showing attempted phone calls made in November and December of 2022), and Exhibit T–2 in Case No. 23-3236, at Doc. 9–2, at 41.  Plaintiff also used the same letter to the Warden dated January 12, 2023.  *See* Plaintiff's Complaint in this case at Doc. 1, at 7–8 (Plaintiff's January 12, 2023 letter to the warden regarding Plaintiff's December 14, 2022 disciplinary hearing), and Exhibit T–3 in Case No. 23-3236, at Doc. 9–2, at 42 (same January 12, 2023 letter).

The statute of limitations applicable to § 1983 actions is determined from looking at the appropriate state statute of limitations and tolling principles.  *See Hardin v. Straub*, 490 U.S. 536, 539 (1989).  "The forum state's statute of limitations for personal injury actions governs civil rights claims under both 42 U.S.C. § 1981 and § 1983. . . . In Kansas, that is the two-year statute of

limitations in Kan. Stat. Ann. § 60–513(a)." *Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch.*, 465 F.3d 1184, 1188 (10th Cir. 2006) (citations omitted).

While state law governs the length of the limitations period and tolling issues, "the accrual date of a § 1983 cause of action is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, the claim accrues "when the plaintiff has a complete and present cause of action." *Id.* (internal quotation marks and citation omitted). In other words, "[a] § 1983 action accrues when facts that would support a cause of action are or should be apparent." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (internal quotation marks and citation omitted), *cert. denied* 549 U.S. 1059 (2006). A district court may dismiss a complaint filed by an indigent plaintiff if it is patently clear from the allegations as tendered that the action is barred by the statute of limitations. *Id.* at 1258–59; *see also Jones v. Bock*, 549 U.S. 199, 214 (2007); *Hawkins v. Lemons*, No. 09-3116-SAC, 2009 WL 2475130, at *2 (D. Kan. Aug. 12, 2009).

It plainly appears from the face of the Complaint that Plaintiff's claims in Counts I and II are subject to dismissal as barred by the applicable two-year statute of limitations. Plaintiff filed his Complaint on December 12, 2025, and his alleged violations occurred in December 2022. He acknowledges that he was aware of the alleged violations by at least January 11, 2023. It thus appears that any events or acts of Defendant taken in connection with Plaintiff's claims took place more than two years prior to the filing of Plaintiff's Complaint and are time-barred. *See Fratus v. Deland*, 49 F.3d 673, 674-75 (10th Cir. 1995) (district court may consider affirmative defenses *sua sponte* when the defense is obvious from the face of the complaint and no further factual record is required to be developed). Plaintiff has not alleged facts suggesting that he would be entitled to statutory or equitable tolling.

Furthermore, even if Plaintiff's claims are not barred by the statute of limitations, the Court in Case No. 23-3236 found that Plaintiff failed to state a due process claim based on his disciplinary proceedings. *See Lewis v. Zmuda*, Case No. 23-3236-JWL, Doc. 6, at 18–20 (D. Kan. Nov. 17, 2023). The Court found that Plaintiff did not allege that the disciplinary actions affected the duration of his sentence, and the punishment imposed, 90 days of privilege restriction and $60 in disciplinary fines, is not the type of atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life that creates a protected liberty interest. *Id.* at 19 (citing *Beauclair v. High*, No. 14-3020-SAC, 2015 WL 93636, at *3 (D. Kan. Jan. 7, 2015) (citing *Hornsby v. Jones,* 392 F. App'x 653, 655 (10th Cir. 2010), for the proposition that punishments of fines and segregation for a limited number of days generally fail to implicate a protected liberty interest); *see also Marshall v. Laird*, 2013 WL 3226632, at *3 (D. Kan. June 25, 2013) ("[A] denial of privileges does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life, and consequently no liberty interest is at stake where the inmate may be sanctioned with a loss of privileges only."); *Blum v. Federal Bureau of Prisons*, 189 F.3d 477, 1999 WL 638232, at *3 (10th Cir. Aug. 23, 1999) (concluding that 90-day disciplinary segregation which left inmate without "store privileges, radio, phone calls, etc." were "such conditions . . . not different in such degree and duration as compared with 'the ordinary incidents of prison life' to be a protected liberty interest under the Due Process clause." (citations omitted))).

Plaintiff is attempting to raise claims that have already been dismissed for failure to state a claim. "Repetitious litigation of virtually identical causes of action may be dismissed under § 1915 as frivolous or malicious." *Winkle v. Hammond*, 601 F. App'x 754, 754–55 (10th Cir. 2015) (quoting *McWilliams v. State of Colo.,* 121 F.3d 573, 574 (10th Cir. 1997) (internal quotation marks and brackets omitted)); *see also Davis v. Bacon*, 234 F. App'x 872, 874 (10th Cir. 2007)

(dismissing as frivolous a complaint that "substantially mirrors" a prior complaint that was dismissed).  Plaintiff should show good cause why his claims in Counts I and II should not be dismissed as time-barred or as frivolous or malicious.

### 2. Count III

As Count III, Plaintiff alleges that Defendants Shawn Chastain and Alexander Owens disregarded a substantial risk to Plaintiff while he was housed in the Restrictive Housing Unit at EDCF in March 2023.  Again, this claim is barred by the applicable two-year statute of limitations as set forth above.  Plaintiff should show good cause why his claim in Count III should not be dismissed as time-barred.

### 3. Counts IV and V

As Count IV, Plaintiff alleges that when he requested to be separated from his cellmate at EDCF in January 2024, he was placed in a less-favorable MRA cell with no electricity or a bunk to avoid sleeping on the floor.  As Count V, Plaintiff alleges that the KDOC subjected Plaintiff to a retaliatory in-facility transfer and cruel and unusual punishment.  Plaintiff alleges that in February 2024 he was still being held in the MRA cell at EDCF.  Plaintiff claims that during this time he had a pending civil rights lawsuit pending against KDOC officials.  Defendant Cody Austin told Plaintiff to pack up because he was being moved to cell 200 in the BCH.  *Id*.  Plaintiff claims that this cell had even worse living conditions.  Plaintiff alleges that after he sent messages on his tablet complaining about his living situation, his tablet was confiscated less than 48 hours later by Larry Johnson and Shawn Chastain.  Plaintiff claims that EDCF never responded to his grievances about cell 200.  Plaintiff claims that he was kept in cell 200 for "approx. 7 days." *Id*.  Plaintiff was then moved to cell 102-B which had no working hot water and the shelf over Plaintiff's bunk was

missing.  Because Plaintiff was forced to store his property on the floor, it was "almost ruined" when an inmate a few cells away flooded his cell.  *Id.*

A prison official violates the Eighth Amendment when two requirements are met.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "First, the deprivation alleged must be, objectively, 'sufficiently serious.'"  *Id.*  To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm."  *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency."  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted).  Indeed, prison conditions may be "restrictive and even harsh."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety."  *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  *Farmer*, 511 U.S. at 834.  Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety.  *Id.*  "[T]he official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id*. It is not enough to establish that the official should have known of the risk of harm. *Id*.

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id*. As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id*. (citations omitted). Plaintiff has alleged minor deprivations suffered for short periods of time. Plaintiff has failed to claim a sufficiently serious deprivation regarding his conditions of confinement.

Furthermore, Plaintiff does not have a right to dictate where he is housed. The Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"). "Changing an inmate's prison classification . . . ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison."

*Sawyer v. Jefferies*, 315 F. App'x 31, 34 (10th Cir. 2008) (citing *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (citing *Meachum*, 427 U.S. at 225)).  Plaintiff has not alleged that his assignment imposed any atypical and significant hardship in relation to the ordinary incidents of prison life.  *Cf. Wilkinson*, 545 U.S. at 223–24 (finding atypical and significant hardship in assignment to supermax facility where all human contact prohibited, conversation not permitted, lights on 24-hours-a-day, exercise allowed for only one hour per day in small indoor room, indefinite placement with annual review, and disqualification of otherwise eligible inmate for parole consideration).

Plaintiff does not have a constitutional right to dictate where he is housed, whether it is which facility or which classification within a facility.  *See Schell v. Evans*, 550 F. App'x 553, 557 (10th Cir. 2013) (citing *Meachum*, 427 U.S. at 228–29; *Cardoso v. Calbone*, 490 F.3d 1194, 1197–98 (10th Cir. 2007).  Moreover, jail officials are entitled to great deference in the internal operation and administration of the facility.  *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979).

Plaintiff should show good cause why his claims in Counts IV and V should not be dismissed for failure to state a claim.

### 4. Count VI

As Count VI, Plaintiff alleges he sent a Form 9 to Officer Owens to serve as a deposition asking Owens to confirm that Plaintiff had a bleeding lip after the assault by another inmate.  The form was returned to Plaintiff without a written confirmation on it, and Plaintiff was told that officials were not allowed to get involved with inmates' legal matters.  *Id*.  Plaintiff claims that his grievance on the matter was denied.

Plaintiff has failed to state a constitutional violation.  If Plaintiff was attempting to obtain discovery for Count III in this case, any attempt at discovery is premature before his case has

passed screening.  As stated above, Count III is subject to dismissal as barred by the statute of limitations.  Furthermore, the denial of a grievance does not constitute a constitutional violation.

Plaintiff acknowledges that a grievance procedure is in place and that he used it.  Plaintiff's claims relate to his dissatisfaction with responses to his grievances.  The Tenth Circuit has held several times that there is no constitutional right to an administrative grievance system.  *Gray v. GEO Group, Inc.*, No. 17–6135, 2018 WL 1181098, at *6 (10th Cir. March 6, 2018) (citations omitted); *Von Hallcy v. Clements*, 519 F. App'x 521, 523–24 (10th Cir. 2013); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *see also Watson v. Evans*, Case No. 13–cv–3035–EFM, 2014 WL 7246800, at *7 (D. Kan. Dec. 17, 2014) (failure to answer grievances does not violate constitutional rights or prove injury necessary to claim denial of access to courts); *Strope v. Pettis*, No. 03–3383–JAR, 2004 WL 2713084, at *7 (D. Kan. Nov. 23, 2004) (alleged failure to investigate grievances does not amount to a constitutional violation); *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) (finding that "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials").  Plaintiff's claims regarding the grievance process and the failure to properly respond to grievances are subject to dismissal for failure to state a claim.

### 5. Count VII

As Count VII, Plaintiff alleges that the KDOC's unconstitutional policy constituted cruel and unusual punishment.  Plaintiff alleges that although his incentive level was Status 2, because he was in restrictive housing he was not allowed to order commissary items under the Union Supply monthly package program that was supposed to provide level 2 and 3 inmates the privilege to order better canteen items.

Plaintiff has failed to allege a constitutional violation.  The Court found in Plaintiff's prior

case that:

> In *Sandin*, 515 U.S. 472, the United States "Supreme Court held that
> a deprivation occasioned by prison conditions or a prison regulation
> does not reach protected liberty interest status and require
> procedural due process protection unless it imposes an 'atypical and
> significant hardship on the inmate in relation to the ordinary
> incidents of prison life.'" *Steffey*, 461 F.3d at 1221 (citing *Sandin*,
> 515 U.S. at 484). The Tenth Circuit ruled in *Cosco,* 195 F.3d at
> 1224, that "[t]he Supreme Court mandate since *Sandin* is that
> henceforth we are to review property and liberty interest claims
> arising from prison conditions by asking whether the prison
> condition complained of presents 'the type of atypical, significant
> deprivation in which a State might conceivably create a liberty [or
> property] interest.'" *Id.* at 1222 (quoting *Sandin*, 515 U.S. at 486).
> To establish a due process claim, the plaintiff must show that he was
> deprived of a protected liberty interest, and that the deprivation
> occurred without sufficient due process protections.
>
> The Tenth Circuit has found that "restrictions on an inmate's
> telephone use, property possession, visitation and recreation
> privileges are not different in such degree and duration as compared
> with the ordinary incidents of prison life to constitute protected
> liberty interests under the Due Process Clause." *Requena v. Roberts*,
> 893 F.3d 1195, 1218 (10th Cir. 2018) (quoting *Marshall v. Morton*,
> 421 F. App'x 832, 838 (10th Cir. 2011) (unpublished)). Because the
> use of a tablet is not a protected liberty interest, Plaintiff's claim that
> he was entitled to due process before his tablet privileges were
> suspended is subject to dismissal.
> * * * *
> Plaintiff does not have a protected liberty interest in a particular
> incentive level. *Thompson v. Coulter*, 680 F. App'x 707, 710 (10th
> Cir. 2017) (citing *Gee v. Pacheco*, 627 F.3d 1178, 1193 (10th Cir.
> 2010), for the proposition that "[a]s a matter of law, [a prisoner] has
> no liberty interest . . . in discretionary classification decisions by
> prison officials"). Therefore, due process protections do not apply.

*Lewis v. Zmuda*, Case No. 23-3236-JWL, Doc. 6, at 17–18, 20 (D. Kan. Nov. 17, 2023).

The same rationale would apply to Plaintiff's claim regarding his ability to order better

canteen items.  Plaintiff should show good cause why his claim in Count VII should not be

dismissed for failure to state a claim.

### 6. **Count VIII**

As Count VIII, Plaintiff alleges that in November 2023 he sought an emergency transfer due to being retaliated against and harassed by staff at EDCF. *Id*. at 18.   Plaintiff alleges that he filed a grievance that was not forwarded to the proper EDCF official and the response he received from Defendant Chastain was "Thank you for your input." *Id*.  Plaintiff then filed a grievance on Chastain, and it was denied. *Id*.  Plaintiff appealed to the Warden and received no response. *Id*. He refiled the grievance a year later and it was denied. *Id*.

As set forth above, Plaintiff's dissatisfaction with the responses or lack of responses to his grievances does not state a claim.  It also appears that claims based on events occurring in November 2023 are barred by the applicable two-year statute of limitations.  Furthermore, Plaintiff does not have a right to dictate where he is housed as set forth above.  Plaintiff should show good cause why his claims in Count VIII should not be dismissed.

### 7. **Count 32**

Plaintiff attaches what appears to be another Count labeled as Count 32. *Id*. at 19.  Plaintiff alleges that although at EDCF he was allowed 15-20 minutes to shower and the use of a mirror when shaving, he is only given a 5 to 7 minutes to shower at HCF and is not permitted to use a mirror while shaving. *Id*.  Plaintiff told staff he was going to seek $1,500 per day that he was deprived of his right to watch his television. *Id*.  Staff refused to give Plaintiff his television and refused Plaintiff's request to transfer. *Id*.  Plaintiff alleges that HCF's mailroom failed to provide him with the four manila envelopes he requested for mailing out legal letters. *Id*.  Plaintiff claims his transfer to HCF from EDCF was retaliatory. *Id*. at 18–19.

As set forth above, to state an Eighth Amendment violation, any alleged deprivation must be, objectively, sufficiently serious.  A prisoner must allege facts showing he or she is incarcerated

under conditions posing a substantial risk of serious harm. Plaintiff's claims regarding reduced shower time, lack of a mirror or television, and the denial of four manila envelopes, fail to state a constitutional violation. Plaintiff has not shown that he is being denied the minimal civilized measure of life's necessities. Plaintiff should show good cause why his claims in Count 32 should not be dismissed for failure to state a claim.

### 8. Retaliation

Plaintiff references retaliation throughout his Complaint. "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted). The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith*

*v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

Plaintiff's claims of retaliation are subject to dismissal for failure to allege adequate facts in support of the claims. Plaintiff's allegations regarding retaliation are generally conclusory, lacking facts to demonstrate any improper retaliatory motive. Plaintiff should show good cause why any claim based on retaliation should not be dismissed for failure to state a claim.

### 9. Unrelated Claims

Plaintiff has raised claims against staff at EDCF and HCF. Plaintiff must follow Rules 20 and 18 of the Federal Rules of Civil Procedure when filing an amended complaint. Rule 20 governs permissive joinder of parties and pertinently provides:

> (2) ***Defendants***. Persons . . . may be joined in one action as defendants if:
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001) (citation omitted). The Court of Appeals for the Seventh Circuit held in *George v. Smith* that under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (Under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.").

Requiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." *Id.* It also prevents prisoners from "dodging" the fee obligations and the three strikes provisions of the Prison Litigation Reform Act. *Id.* (Rule 18(a) ensures "that prisoners pay the required filing fees— for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").

In sum, under Rule 18(a), a plaintiff may bring multiple claims against a single defendant. Under Rule 20(a)(2), he may join in one action any other defendants who were involved in the same transaction or occurrence and as to whom there is a common issue of law or fact. He may not bring multiple claims against multiple defendants unless the prescribed nexus in Rule 20(a)(2) is demonstrated with respect to all defendants named in the action.

The Federal Rules authorize the court, on its own initiative at any stage of the litigation, to drop any party and sever any claim. Fed. R. Civ. P. 21; *Nasious v. City & Cnty. of Denver Sheriff's Dept.*, 415 F. App'x 877, 881 (10th Cir. 2011) (to remedy misjoinder, the court has two options: (1) misjoined parties may be dropped or (2) any claims against misjoined parties may be severed and proceeded with separately). In any amended complaint, Plaintiff should set forth the transaction(s) or occurrence(s) which he intends to pursue in accordance with Rules 18 and 20, and limit his facts and allegations to properly-joined defendants and occurrences. Plaintiff must allege facts in his complaint showing that all counts arise out of the same transaction, occurrence, or series of transactions or occurrences; and that a question of law or fact common to all defendants will arise in this action.

## IV.  Motion for Appointment of Counsel

Plaintiff has filed a Motion for Appointment of Counsel (Doc. 3) and a Memorandum in

Support (Doc. 5).  Plaintiff argues that he is unable to afford counsel, the issues are complex, he has limited access to a law library, he has been unable to obtain counsel, and he has a limited understanding of the law.  (Doc. 3, at 1.)  Plaintiff claims that if he had an attorney, the KDOC would treat him differently and would provide him with legal materials.  (Doc. 5, at 2.)  Plaintiff also argues that his claims have merit.  *Id*. at 3.

The Court has considered Plaintiff's motion for appointment of counsel.  There is no constitutional right to appointment of counsel in a civil case.  *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995).  "Rather, a court has discretion to *request* an attorney to represent a litigant who is proceeding in forma pauperis" in a civil case.  *Johnson v. Johnson*, 466 F.3d 1213, 1217 (10th Cir. 2006) (emphasis added) (citing 28 U.S.C. § 1915(e)(1)).  In other words, if this motion is granted, it means only that the Court will request that an attorney volunteer to be appointed to represent Plaintiff at no cost to Plaintiff.  The Court cannot guarantee that an attorney will volunteer.  *See Rachel v. Troutt*, 820 F.3d 390, 396 (10th Cir. 2016) ("Courts are not authorized to appoint counsel in § 1983 cases; instead, courts can only 'request' an attorney to take a case.").

The decision whether to appoint counsel—meaning to request counsel to provide representation at no cost to Plaintiff—in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).  The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant appointment of counsel.  *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (citing *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)).  It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (citing *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to request volunteer counsel for Plaintiff, the Court has considered "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Rucks*, 57 F.3d at 979; *Hill*, 393 F.3d at 1115. The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not yet clarified and may not be complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments. Thus, the Court will deny the motion without prejudice to refiling if this matter survives screening.

## V.  Response and/or Amended Complaint Required

Plaintiff is required to show good cause why Plaintiff's claims should not be dismissed for the reasons stated herein. Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein. To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.

Plaintiff must write the number of this case (25-3271-JWL) at the top of the first page of the amended complaint and must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the amended complaint, where Plaintiff must allege facts describing the unconstitutional acts taken by

each defendant including dates, locations, and circumstances.  Plaintiff must allege sufficient additional facts to show a federal constitutional violation. Plaintiff is given time to file a complete and proper amended complaint in which Plaintiff (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.  If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, Plaintiff's claims may be dismissed without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Appointment of Counsel (Doc. 3) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **February 17, 2026,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **February 17, 2026**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated January 16, 2026, in Kansas City, Kansas.**

>S/ John W. Lungstrum
>**JOHN W. LUNGSTRUM**
>**UNITED STATES DISTRICT JUDGE**