**FILED**
**U.S. District Court**
**District of Kansas**
03/06/2026
**Clerk, U.S. District Court**
**By:** SND **Deputy Clerk**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TONY TREMAYNE LEWIS,

  **Plaintiff,**

  v.          **CASE NO. 25-3271-JWL**

JEFF ZMUDA, et al.,

  **Defendants.**

### MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights case under 42 U.S.C. § 1983. Plaintiff is incarcerated at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF"). The Court granted Plaintiff leave to proceed in forma pauperis. On January 16, 2026, the Court entered a Memorandum and Order to Show Cause (Doc. 7) ("MOSC") granting Plaintiff until February 17, 2026, to show good cause why his claims should not be dismissed for the reasons set forth in the MOSC or to file an amended complaint to cure the deficiencies. Plaintiff has not filed an amended complaint. This matter is before the Court on Plaintiff's response (Doc. 11). Plaintiff's factual allegations and the Court's screening standards are set forth in detail in the MOSC.

Plaintiff's claims in Counts I and II are based on disciplinary proceedings that occurred in December 2022. Count III is based on an incident that allegedly occurred in March 2023. Plaintiff filed his Complaint on December 12, 2025. The Court found in the MOSC that Plaintiff's claims in Counts I, II, and III are barred by the applicable statute of limitations and that Plaintiff failed to allege facts suggesting that he would be entitled to statutory or equitable tolling.

The Court found that even if Plaintiff's claims regarding his disciplinary hearings were not barred by the statute of limitations, the Court in Case No. 23-3236 found that Plaintiff failed to state a due process claim based on his disciplinary proceedings. *See Lewis v. Zmuda*, Case No. 23-

1

3236-JWL, Doc. 6, at 18–20 (D. Kan. Nov. 17, 2023). The Court found that Plaintiff was attempting to raise claims that have already been dismissed for failure to state a claim. "Repetitious litigation of virtually identical causes of action may be dismissed under § 1915 as frivolous or malicious." *Winkle v. Hammond*, 601 F. App'x 754, 754–55 (10th Cir. 2015) (quoting *McWilliams v. State of Colo.,* 121 F.3d 573, 574 (10th Cir. 1997) (internal quotation marks and brackets omitted)); *see also Davis v. Bacon*, 234 F. App'x 872, 874 (10th Cir. 2007) (dismissing as frivolous a complaint that "substantially mirrors" a prior complaint that was dismissed). The Court found that Plaintiff's claims in Counts I and II were also subject to dismissal as frivolous or malicious.

In his response, Plaintiff indicates that because the claims in Counts I and II were dismissed from his prior case "without prejudice" he believes that they should not be barred by the statute of limitations. (Doc. 11, at 1.) The Court's Memorandum and Order in Case No. 23-3236 dismisses the case "for failure to state a claim upon which relief may be granted" and does not state that it is dismissed "without prejudice." *See Lewis v. Zmuda*, Case No. 23-3236-JWL, Doc. 12, at 8 (D. Kan. Jan. 31, 2024) ("all claims, except Plaintiff's First Amendment claim, are dismissed for failure to state a claim upon which relief may be granted"); Doc. 27, at 8 (D. Kan. July 11, 2024) ("this matter is dismissed for failure to state a claim upon which relief may be granted" and " 'Motion for Leave to File Second Amended Complaint' is denied"). The only thing in the docket that is "without prejudice" is the denial of Plaintiff's first motion for appointment of counsel. *See id*. at Doc. 6. In addition, even "[i]f the district court dismissed the complaint without prejudice *and* without leave to amend, any further complaint filed in a new case would be barred by the statute of limitations." *Hogan v. Pilgrim's Pride Corp.*, 73 F.4th 1150, at n.9 (10th Cir. 2023).

Plaintiff also claims that the Court referenced his exhibit and should have used it as proof of the validity of his claims regarding his disciplinary proceedings.  However, the Court merely cited the exhibit to show the timeframe of Plaintiff's disciplinary proceedings, which indicated they were time-barred.  As to Count III, Plaintiff alleges that this claim was not addressed in his prior case and therefore he assumed he would be allowed to make the claim in this case.  (Doc. 11, at 2.)  Plaintiff provides no argument as to why he should be able to file a claim that is time-barred merely because it was not addressed in his prior case.

Plaintiff then argues that his claims in Counts I, II, and III are part of "continuing wrongs." (Doc. 11, at 1–2.)  "The continuing violation theory combines 'conduct from both inside and outside the limitations period into one single violation that, taken as a whole, satisfies the applicable statute of limitations.' " *Balance v. Johnson Cty., Kansas, Bd. of Comm'rs*, 2026 WL 228639, at *2 (10th Cir. 2026) (unpublished) (citing *Hamer v. City of Trinidad*, 924 F.3d 1093, 1100 (10th Cir. 2019)).  "The doctrine applies where no single act comprises the cause of action because the claim is based upon combining the effects of the individual actions." *Id*. (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002)).  Plaintiff's claimed injuries are not those where a series of related events are needed to constitute the violation.  *See id.*  Plaintiff's alleged violations are based on disciplinary proceedings that occurred in 2022 and an incident occurring in March 2023.  Plaintiff has failed to show good cause why his claims in Counts I, II, and III should not be dismissed for failure to state a claim.[1]

As Count IV, Plaintiff alleges that when he requested to be separated from his cellmate at EDCF in January 2024, he was placed in a less-favorable MRA cell with no electricity or a bunk

---

[1] A dismissal as time-barred is for failure to state a claim.  *Smith v. Veterans Admin.*, 636 F.3d 1306, 1313 (10th Cir. 2011).

to avoid sleeping on the floor.  As Count V, Plaintiff alleges that the KDOC subjected Plaintiff to a retaliatory in-facility transfer and cruel and unusual punishment.  The Court found in the MOSC that Plaintiff alleged minor deprivations suffered for short periods of time and failed to state a sufficiently serious deprivation regarding his conditions of confinement.  The Court also found that Plaintiff does not have a right to dictate where he is housed.

In his response, Plaintiff claims that he was not denied electricity, but rather was denied a phone in his cell for three weeks.  (Doc. 11, at 2.)  Plaintiff alleges that staff failed to give him a reason why he was denied a telephone in violation of an IMPP.  *Id*.  Plaintiff also alleges that his placement that is the subject of Count V was also done without documenting a reason why in violation of an IMPP.  *Id*. at 3.  In an attempt to argue that his transfer was retaliatory, Plaintiff alleges that days before his move he had filed documents to amend his claims in his prior action and to add the KDOC as a defendant.  *Id*.  He also claims that he had filed grievances against prison officials.  *Id*.  As for the conditions in cell 200, Plaintiff alleges that there was no outlet, so he was not allowed to watch his television for seven days.  *Id*. at 4.  Plaintiff alleges that this failure to provide him use of his television also violated an IMPP.  *Id*.

Violations of state law or prison regulations do not provide a cause of action under § 1983.  Plaintiff must state a federal constitutional violation.  State statutes do not provide a basis for liability under § 1983 which only protects rights secured by the Constitution and laws of the United States.  *D.L. v. United Sch. Dist. No. 497*, 596 F.3d 768, 776 (10th Cir. 2010) (finding that "Plaintiffs' citations to Kansas case law to support their claim . . . is unavailing, as § 1983 affords a remedy for violations of federal law and does not 'provide a basis for redressing violations of *state* law.'") (citation omitted).

Plaintiff claims violations of IMPPs (KDOC Internal Management Policy & Procedure). The violation of a prison regulation does not state a constitutional violation unless the prison official's conduct "failed to conform to the constitutional standard." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (internal quotation marks omitted) (holding prisoner must establish that violation of a prison policy necessarily stated a constitutional violation). As the Tenth Circuit has stated:

> [N]o reasonable jurist could conclude that [a plaintiff's] claim that prison officials deprived him of due process by violating internal prison regulations rises to the level of a due process violation. Prison regulations are "primarily designed to guide correctional officials in the administration of a prison [They are] not designed to confer rights on inmates…." *Sandin v. Conner*, 515 U.S. 472, 481-82, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

*Brown v. Wyoming Dept. of Corrections*, 234 F. App'x 874, 878 (10th Cir. 2007). Plaintiff has failed to show good cause why his claims in Counts IV and V should not be dismissed for failure to state a claim.

As Count VI, Plaintiff alleges he sent a Form 9 to Officer Owens to serve as a deposition asking Owens to confirm that Plaintiff had a bleeding lip after the assault by another inmate. The form was returned to Plaintiff without a written confirmation on it, and Plaintiff was told that officials were not allowed to get involved with inmates' legal matters. Plaintiff claims that his grievance on the matter was denied. The Court found in the MOSC that Plaintiff failed to state a constitutional violation, finding that if Plaintiff was attempting to obtain discovery for Count III in this case, any attempt at discovery is premature before his case has passed screening. In addition, the Court noted that Count III was subject to dismissal as barred by the statute of limitations, and the denial of a grievance does not constitute a constitutional violation. Plaintiff

does not address Count VI in his response.  Plaintiff has failed to show good cause why Count VI should not be dismissed for failure to state a claim.

As Count VII, Plaintiff alleges that the KDOC's unconstitutional policy constituted cruel and unusual punishment.  Plaintiff alleges that although his incentive level was Status 2, because he was in restrictive housing he was not allowed to order commissary items under the Union Supply monthly package program that was supposed to provide level 2 and 3 inmates the privilege to order better canteen items.  The Court found that Plaintiff failed to allege a constitutional violation.  The Court cited the Court's decision in Plaintiff's prior case and found that the same rationale would apply to Plaintiff's claim regarding his ability to order better canteen items.  *See Lewis v. Zmuda*, Case No. 23-3236-JWL, Doc. 6, at 17–18, 20 (D. Kan. Nov. 17, 2023).

In his response, Plaintiff alleges that the Union Supply monthly package ban is being enforced in violation of an IMPP.  (Doc. 11, at 5.)  Plaintiff argues that an IMPP is considered state law.  *Id*.  As set forth above, the violation of a prison regulation does not state a constitutional violation unless the prison official's conduct failed to conform to the constitutional standard.  The Court's MOSC sets forth in detail the reasoning from Plaintiff's prior case, in which the Court found that:  restrictions on telephone use, property possession, visitation, and recreation privileges do not impose an atypical and significant hardship in relation to the ordinary incidents of prison life; and Plaintiff does not have a protected liberty interest in a particular incentive level.  (Doc. 7, at 15.)  Plaintiff has failed to show good cause why his claims in Count VII should not be dismissed for failure to state a claim.

As Count VIII, Plaintiff alleges that in November 2023 he sought an emergency transfer due to being retaliated against and harassed by staff at EDCF.  Plaintiff alleges that he filed a grievance that was not forwarded to the proper EDCF official and the response he received from

Defendant Chastain was "Thank you for your input." Plaintiff then filed a grievance on Chastain, and it was denied. Plaintiff appealed to the Warden and received no response. He refiled the grievance a year later and it was denied. The Court found in the MOSC that Plaintiff's dissatisfaction with the responses or lack of responses to his grievances does not state a claim; claims based on events occurring in November 2023 are barred by the applicable two-year statute of limitations; and Plaintiff does not have a right to dictate where he is housed. Plaintiff does not address Count VIII in his response. Plaintiff has failed to show good cause why Count VIII should not be dismissed for failure to state a claim.

Plaintiff's Complaint includes another Count labeled as Count 32, alleging that although at EDCF he was allowed 15-20 minutes to shower and the use of a mirror when shaving, he is only given 5 to 7 minutes to shower at HCF and is not permitted to use a mirror while shaving. (Doc. 1, at 19.) Plaintiff also alleged that staff refused to give Plaintiff his television, refused his request to transfer, that HCF's mailroom failed to provide him with the four manila envelopes he requested for mailing out legal letters, and that his transfer to HCF from EDCF was retaliatory. *Id*. The Court found in the MOSC that Plaintiff's claims regarding reduced shower time, lack of a mirror or television, and the denial of four manila envelopes, fail to state a constitutional violation. The Court found that Plaintiff failed to show that he is being denied the minimal civilized measure of life's necessities.

Regarding his transfer to HCF, Plaintiff alleges in Count 32 that his "transfer to HCF from EDCF must be deemed an act of retaliation." *Id*. at 20. Plaintiff provides no other factual support in his Complaint for why he believes his transfer to HCF was retaliatory. "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been

proper." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted).  The Tenth

Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment
> rights may be shown by proving the following elements:  (1) that the plaintiff was
> engaged in constitutionally protected activity; (2) that the defendant's actions
> caused the plaintiff to suffer an injury that would chill a person of ordinary firmness
> from continuing to engage in that activity; and (3) that the defendant's adverse
> action was substantially motivated as a response to the plaintiff's exercise of
> constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation

because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252,

1264 (10th Cir. 2006) (quotations and citations omitted).  Thus, for this type of claim, "it is

imperative that plaintiff's pleading be factual and not conclusory.   Mere allegations of

constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir.

1990).  "To prevail, a prisoner must show that the challenged actions would not have occurred 'but

for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith

v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144

(10th Cir. 1998)).

The Court found in the MOSC that Plaintiff's claims of retaliation are subject to dismissal

for failure to allege adequate facts in support of the claims, and that Plaintiff's allegations regarding

retaliation are generally conclusory, lacking facts to demonstrate any improper retaliatory motive.

The Court ordered Plaintiff to show good cause why any claim based on retaliation should not be

dismissed for failure to state a claim.  Plaintiff was also given the opportunity to file an amended

complaint to cure the deficiencies noted in the MOSC.

Plaintiff has not filed an amended complaint to add factual support for his retaliation claim.

8

In his response, Plaintiff argues that his transfer from EDCF to HCF was retaliatory. (Doc. 11, at 6.) He claims that he was transferred because he "voiced a preparation to sue prison officials." *Id*. Plaintiff claims that he was transferred shortly after he had that conversation with Centurion mental health provider Ashley McKeen. *Id*. Plaintiff alleges that when he was transferred, he did not receive his property for approximately 12 days, and when he finally received it, several documents were missing. *Id*. Plaintiff claims the conversation where he indicated he was considering a lawsuit occurred with Centurion mental health provider Ashley McKeen at EDCF, but he does not indicate when the conversation occurred, what exactly was said, or why he believes this resulted in his transfer to HCF.

Plaintiff claims that his placement at HCF was "something which could surely chill a person from continuing his or her civil suit." *Id*. The online Kansas Adult Supervised Population Electronic Repository ("KASPER") shows that Plaintiff was transferred to HCF on September 15, 2025.[2] He filed this action on December 12, 2025.

Plaintiff claims, without explanation, that if he had not disclosed his plans to file the lawsuit, he is certain he would have remained at EDCF. (Doc. 11, at 6.) However, in his Complaint, he indicated that he was seeking a transfer from EDCF at the end of 2023, and that he continued to seek a transfer for over a year after that timeframe. Plaintiff alleges that he was housed at EDCF during November 2023, and "during that time [he] was constantly being retaliated and harassed by prison staff." (Doc. 1, at 18.) Plaintiff claims that due to those retaliatory actions he was being subjected to, "[he] sought an immediate 'emergency transfer,' away to a safer facility." *Id*. Plaintiff alleges that his request was responded to on December 13, 2023, by Defendant Shawn Chastain with "thank you for your input." *Id*. Plaintiff alleges that he filed a

---

[2] *See* https://kdocrepository.doc.ks.gov/kasper/search/results (last visited March 5, 2026).

grievance based on Chastain's response and appealed the matter to the warden. *Id*. Plaintiff claims that he "didn't receive a response, so [he] resubmitted [his] dissent almost a year later." *Id*. Plaintiff claims that the Warden's Office made another denial and he appealed to the Central Office. *Id*. Plaintiff claims that about two weeks later, Chastain repeated this sort of harassment, and again his grievances were denied as well as "the remedy [he] requested which was an immediate transfer and an extra pancake and hamburger meal." *Id*. Plaintiff claims that his conditions at HCF are less favorable than his conditions at EDCF. *Id*. at 19. He argues that he then sought a transfer "to a place similar to EDCF's RHU." *Id*. In his request for relief in his Complaint, Plaintiff seeks a transfer to Vermont or Indiana. *Id*. at 26–27.

Plaintiff's Complaint fails to provide any factual support regarding his claim that his transfer to HCF was retaliatory. He merely makes the bald conclusion that his "transfer to HCF from EDCF must be deemed an act of retaliation." *Id*. at 20. In his response to the MOSC, Plaintiff does not indicate what was said to his mental health provider, when it was said, or why he believes it resulted in his transfer. While housed at EDCF, Plaintiff was seeking a transfer. *See Stauch v. Zmuda*, 2024 WL 3566678, at *20 (D. Kan. 2024) (finding that plaintiff's conclusory allegations that her transfer was retaliatory failed to show that her transfer would not have occurred but for a retaliatory motive where she was transferred after expressing concerns for her safety due to her high-profile criminal case); *Payton v. Marlette*, 2013 WL 3147661, at *5 (D. Kan. 2013) (finding that although defendants did not move plaintiff to his preferred location, the transfer was initiated by plaintiff's request to be transferred and not in retaliation). Plaintiff has failed to allege specific facts in his Complaint showing retaliation because of the exercise of his constitutional rights. Plaintiff has failed to show good cause why his retaliation claim in Count 32 should not be dismissed for failure to state a claim.

The Court's MOSC provides that "[i]f Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, Plaintiff's claims may be dismissed without further notice." (Doc. 7, at 22.) Plaintiff has failed to file an amended complaint and has failed to show good cause why his Complaint should not be dismissed for the reasons set forth in the MOSC.

Plaintiff filed a "Motion for Court Order" (Doc. 14) alleging that the survival of his claims depends on his ability to provide a current six-month account statement, and asking the Court to order the KDOC to use his forced saving to pay the filing fee in full. (Doc. 14, at 1–2.) On January 16, 2026, the Court granted Plaintiff's motion for leave to proceed in forma pauperis and assessed an initial partial filing fee in the amount of $21.50. (Doc. 6.) The initial partial filing fee was paid on January 29, 2026. Therefore, the survival of this case was not dependent on Plaintiff providing an updated six-month account statement and his filing fee is not due in full. The remainder of the $350.00 filing fee will be paid in installments calculated under 28 U.S.C. § 1915(b)(2). Plaintiff's motion is denied as moot.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is **dismissed** for failure to state a claim.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Court Order (Doc. 14) is **denied as moot.**

**IT IS SO ORDERED**.

**Dated March 6, 2026, in Kansas City, Kansas.**

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE

11